1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

2

3    UNITED STATES OF AMERICA,          )      Case No. CR05-00104
                                        )
                    Plaintiff,     )      Honolulu, Hawaii
4                                       )      September 7, 2005
                                        )      2:37 p.m.
5            v.                     )
                                        )
6    MANUEL OMAR LUERA,                 )      COPY
                                        )
7                 Defendant.    )
     _____)

8

9        TRANSCRIPT OF WITHDRAWAL OF NOT GUILTY PLEA AND TO PLEAD ANEW
               BEFORE THE HONORABLE KEVIN S.C. CHANG
10                UNITED STATES MAGISTRATE JUDGE.

11   APPEARANCES:

12   For the Plaintiff:          U.S. ATTORNEY'S OFFICE
                                 By: BEVERLY WEE SAMESHIMA, ESQ.
13                               300 Ala Moana Boulevard, #6100
                                 Honolulu, Hawaii 96850
14
     For the Defendant:          RANDALL OYAMA, ESQ.
15                               888 Mililani Street, PH2
                                 Honolulu, Hawaii 96813
16

17

18   Transcriber:                Jessica B. Cahill
                                 P.O. Box 1652
19                               Wailuku, Maui, Hawaii 96793
                                 Telephone: (808)244-0776
20

21

22

23   Proceedings recorded by electronic sound recording, transcript
     produced by transcription service
24

25                 EXHIBIT D

1            THE CLERK:  This Honorable Court is now in session.

2    Criminal number 05-104DAE, United States of America versus

3    Manuel Omar Luera.  This case has been called for a hearing on a

4    motion for withdrawal of not guilty plea and to plead anew.  May

5    I have your appearances?

6            MS. SAMESHIMA:  Yes, good afternoon, your Honor,

7    Beverly Wee Sameshima on behalf of the United States.

8            THE COURT:  Good afternoon.

9            MR. OYAMA:  Good afternoon, your Honor, Randy Oyama

10   appearing on behalf of Manuel Omar Luera who is present in Court

11   today.

12           THE COURT:  Good afternoon.

13           THE DEFENDANT:  Hi.

14           THE COURT:  Mr. Luera, is it your intention this

15   afternoon to plead guilty to Count 1 of the indictment?

16           THE DEFENDANT:  Yes, it is.

17           THE COURT:  Okay.  Before I can accept your guilty

18   plea I must know that you understand what you are doing, that

19   you're pleading guilty freely and voluntarily, that there is a

20   factual basis for your change of plea, and that the ends of

21   justice would be met to allow you to change your plea.

22           To make these determinations I'm going to ask you some

23   questions.  If you do not understand any of the words or the

24   questions would you please say so?

25           THE DEFENDANT:  Yes.

1          THE COURT:  All right.  Would you administer the oath

2    please?

3                    MANUEL OMAR LUERA

4    Was called by the Court and after having been first duly sworn

5    was examined and testified as follows:

6          THE COURT:  Mr. Luera, because everything you and I

7    say this afternoon is being recorded I'm going to ask you to

8    keep your voice up.

9          THE DEFENDANT:  All right.

10          THE COURT:  What is your full name?

11          THE DEFENDANT:  Manuel Omar Luera.

12          THE COURT:  And how old are you?

13          THE DEFENDANT:  I'm 28 years old.

14          THE COURT:  How far did you go in school?

15          THE DEFENDANT:  I reached about seven classes away

16    from graduating at the University of Hawaii.

17          THE COURT:  Have you taken any medication, alcohol, or

18    drugs of any kind today?

19          THE DEFENDANT:  No, I have not.

20          THE COURT:  Do you feel --

21          THE DEFENDANT:  I wish.

22          THE COURT:  -- do you feel well and alert today?

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  Do you understand what is going on?

25          THE DEFENDANT:  Of course.

4

1          THE COURT:  Have you been treated recently for any

2    mental illness or addiction to narcotic drugs of any kind?

3          THE DEFENDANT:  No, I have not.

4          THE COURT:  Mr. Oyama, to the best of your knowledge,

5    is the defendant fully competent to enter a valid plea today?

6          MR. OYAMA:  Yes, your Honor.

7          THE COURT:  The Court finds that the defendant is

8    fully competent and capable of entering an informed plea.  Mr.

9    Luera, if you choose to enter a guilty plea in this case you

10   have the right to enter that plea before a United States

11   District Judge.  If you consent, however, you may enter your

12   guilty plea before me a United States Magistrate Judge.     If

13   you enter a guilty plea here today Judge Ezra would impose

14   sentence at a later hearing.  Do you understand that?

15         THE DEFENDANT:  Yes, I do.

16         THE COURT:  I have before me a document entitled

17   consent to Rule 11 plea in a felony case before a United States

18   Magistrate Judge.  Mr. Luera, did you sign this document?

19         THE DEFENDANT:  Yes, I did.

20         THE COURT:  Is it your wish to consent to enter your

21   plea before me a Magistrate Judge and to give up or waive your

22   right to enter that plea before a United States District Judge?

23         THE DEFENDANT:  Yeah, that's fine.

24         THE COURT:  Mr. Oyama, have you discussed the consent

25   form with your client?

1              MR. OYAMA:  Yes, I have, Judge.

2              THE COURT:  And are you satisfied that he understands

3     it?

4              MR. OYAMA:  Yes, I do.

5              THE COURT:  Have you also signed the document?

6              MR. OYAMA:  I did.

7              THE COURT:  The Court finds that defendant has

8     consented to enter his plea before a United States Magistrate

9     Judge.  Mr. Luera, have you received a copy of the indictment

10    pending against you that is the written charges made against you

11    in this case?

12             THE DEFENDANT:  Yes, I have.

13             THE COURT:  Have you fully discussed the charges and

14    all of the facts surrounding the charges with Mr. Oyama your

15    attorney?

16             THE DEFENDANT:  Yes, I have.

17             THE COURT:  Are you fully satisfied with the legal

18    representation that you've received from Mr. Oyama your attorney

19    in this case?

20             THE DEFENDANT:  He's fine.

21             THE COURT:  Mr. Oyama, is the defendant's guilty plea

22    before the Court today pursuant to your advice and

23    recommendation?

24             MR. OYAMA:  It is, your Honor.

25             THE COURT:  Mr. Luera, the Court's been furnished with

1  a written plea agreement. Is this your signature on the last

2  page?

3            THE DEFENDANT: Yes, it is.

4            THE COURT: Did you have an opportunity to read and

5  discuss the plea agreement with your lawyer before you signed

6  it?

7            THE DEFENDANT: Yes, I did.

8            THE COURT: Do you understand the terms of the plea

9  agreement?

10           THE DEFENDANT: Clearly.

11           THE COURT: Does the plea agreement cover every aspect

12  of the agreement that you have with the Government?

13           THE DEFENDANT: Yes.

14           THE COURT: Has anyone made any other, or different

15  promise, or assurance of any kind to you in an effort to get you

16  to plead guilty?

17           THE DEFENDANT: No.

18           THE COURT: Has anyone attempted to force you to plead

19  guilty, or pressure you, or threaten you in any way?

20           THE DEFENDANT: No.

21           THE COURT: Ms. Sameshima, would you summarize the

22  major terms of the plea agreement?

23           MS. SAMESHIMA: Yes, your Honor. In the plea

24  agreement the defendant is agreeing that he will plead guilty to

25  Count 1 of the indictment which charges him with conspiracy to

1  distribute and possess with the intent to distribute 500 grams

2  or more of a mixture and substance containing a detectable

3  amount of methamphetamine.  The Government agrees that it will

4  move to dismiss Count 2 of the indictment after sentencing.

5            The defendant is agreeing that the offense conduct

6  which is alleged in Count 2 of the indictment is relevant

7  conduct and shall be used in calculating his base offense level

8  pursuant to Sentencing Guidelines, Section 2D1.1C.

9            There is a provision in the plea agreement which sets

10  forth the minimum as well as the maximum penalties for the

11  offense to which the defendant is pleading guilty and those are

12  set forth as a minimum mandatory term of imprisonment of ten

13  years, a maximum term of imprisonment of life, a fine of

14  anywhere from zero to $4 million, a minimum term of supervised

15  release of five years and a maximum of life, and there is a

16  mandatory special assessment of $100.00.

17            The defendant also understands, as set forth in

18  paragraph 7C, that he may be losing certain federal and civil

19  rights as a result of his guilty plea.

20            There is the factual basis for the plea and that's set

21  forth in paragraph eight which is contained on pages four, five

22  and six.  There is a waiver of appeal of rights in which the

23  defendant agrees that he is waiving either in a direct appeal or

24  in a collateral attack all his rights to appeal this sentence

25  except in two limited circumstances.

1      First, the defendant is reserving his right to appeal

2  his sentence if Judge Ezra should go higher than what the

3  advisory guidelines are for this defendant.  And, secondly, he

4  may also appeal if he has a claim that his attorney was

5  ineffective in representing him.  But he is waiving all other

6  claims, all other disputes with respect to his sentence.  The

7  Government is reserving its right to appeal the sentence in the

8  manner in which it is imposed.

9      There is a stipulation in this plea agreement that's

10  set forth in paragraph 10A in which the United States Attorney

11  agrees that the defendant's pleading guilty here today is timely

12  notice of his intent to plead guilty so that we do not have to

13  prepare for a trial in this case.  And therefore we do

14  anticipate moving the Court for a one level reduction in his

15  sentencing offense level at the time of sentencing.  However, we

16  do reserve the right to take a different position if there is

17  different evidence or issues that arise that would warrant us

18  taking a different position.

19      The defendant is agreeing that he will be bound by

20  this plea agreement, and he will not seek to withdraw from the

21  plea agreement.  But he agrees that if he does file a motion to

22  withdraw from the plea agreement and the Court grants that

23  motion he waives his right to certain protections afforded him

24  under the Federal Rules of Criminal Procedure and the Federal

25  Rules of Evidence with respect to admissions that he will be

1  making in the context of this Rule 11 proceeding.

2          He also is waiving certain rights such as his right to

3  jury trial, his right to -- against self -- self incrimination.

4  And specifically he is waiving his right to have the jury

5  determine beyond a reasonable doubt the quantity and the weight

6  of the controlled substances that are charged in the indictment

7  and to which he's pleading guilty.

8          There's a cooperation clause in this plea agreement in

9  which he agrees to provide truthful and complete information to

10  the Government, and if he's called upon to testify in any

11  proceeding he agrees that he will do so.  He also understands

12  that the Government may, but the Government is not obligated to

13  file a motion for downward departure based upon his substantial

14  assistance.  The plea agreement provides that the decision

15  whether to file the motion is wholly within the discretion of

16  the prosecution.  The defendant has no right to force the

17  Government to file such a motion.

18          And the plea agreement also provides that if the

19  Government does file such a motion it's the sentencing judge,

20  Judge Ezra, who will decide whether he should grant that motion,

21  and it's the sentencing judge that decides how much in a

22  downward departure to give the defendant.  And those are the

23  main terms of his plea agreement.

24          THE COURT:  Mr. Luera, does that accurately state your

25  agreement with the Government?

1      THE DEFENDANT:  Yes.

2      THE COURT:  Do you understand that you are waiving or
3  giving up all of your rights to appeal except for two
4  situations?  First, if Judge Ezra imposes a sentence above the
5  advisory sentencing guidelines and, secondly, in the event of
6  ineffective assistance of counsel.

7      THE DEFENDANT:  Yes, sir, I understand.

8      THE COURT:  Do you fully understand the charges
9  covered by the plea agreement?

10      THE DEFENDANT:  Yes, I do.

11      THE COURT:  Ms. Sameshima, again, what are the maximum
12  possible penalties for Count 1 of the indictment?

13      MS. SAMESHIMA:  Yes, for Count 1, your Honor, the
14  maximum penalty is life in prison, a mandatory minimum term of
15  imprisonment of ten years, a minimum term of supervised release
16  of five years and possibly up to life for supervised release, a
17  $100.00 special assessment, and a fine from zero to $4 million.

18      THE COURT:  Mr. Oyama, do you agree with that summary
19  as to the possible penalties?

20      MR. OYAMA:  Yes, your Honor.

21      THE COURT:  Mr. Luera, do you understand that these
22  are the possible penalties that you would face if you enter a
23  guilty plea to the charge in this case?

24      THE DEFENDANT:  Yes, I do.

25      THE COURT:  During the period of supervised release

1    you must comply with a set of conditions which will be explained

2    to you by your probation officer.  Those conditions will include

3    requirements that you obey the law, that you report as required

4    to the probation officer, and other conditions.

5            If the Court finds that you violated any of those

6    conditions you could be required to serve additional prison

7    time.  Do you understand that?

8            THE DEFENDANT:  Yes, I do.

9            THE COURT:  Are you presently on probation, parole, or

10   supervised release from any other case?

11           THE DEFENDANT:  No.

12           THE COURT:  Ms. Sameshima, does the United States

13   contend that any felony offense to which the defendant is today

14   pleading guilty occurred while he was released on bond in

15   relation to some other federal criminal charge?

16           MS. SAMESHIMA:  No, your Honor.

17           THE COURT:  Does this case involve possible

18   restitution or forfeiture?

19           MS. SAMESHIMA:  This case does not, but there is a

20   separate, I believe, civil forfeiture action that's been filed

21   with respect to Mr. Luera.

22           THE COURT:  Okay.  Mr. Luera, if you are convicted of

23   the charge in this case you may lose valuable civil rights

24   including the right to vote, the right to hold public office,

25   the right to serve on a jury, and the right to possess any kind

1  of a firearm.   Do you understand that?

2         THE DEFENDANT:   Yes, I do.

3         THE COURT:   The United States Sentencing Commission

4  has issued guidelines for judges to use in determining the

5  sentence in a criminal case.   While judges are not bound to

6  apply the guidelines, judges must consult the guidelines and

7  take them into account in determining the sentence.   Have you

8  and your attorney talked about how the guidelines might apply to

9  your case?

10         THE DEFENDANT:   Yes, we have.

11         THE COURT:   Do you understand that the Court will not

12  be able to determine the advisory guideline sentence for your

13  case until after the presentence report has been completed, and

14  you and the Government have had an opportunity to challenge the

15  reported facts and the application of the guidelines recommended

16  by the probation officer, and that the sentence imposed may be

17  different from any estimate your attorney may have given you?

18         THE DEFENDANT:   Yes.

19         THE COURT:   Do you also understand that after your

20  advisory guideline range has been determined the Court has the

21  discretion and authority to depart from the guidelines and to

22  impose a sentence that is more severe or less severe than the

23  sentence indicated in the advisory sentencing guideline range?

24         THE DEFENDANT:   Understood.

25         THE COURT:   Do you understand that Judge Ezra will

1  also determine your sentence based on admissions that you make

2  at this change of plea hearing?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Do you understand that you do not have to

5  admit to factual matters in dispute, but if you do admit to

6  certain facts at this hearing Judge Ezra will rely on your

7  admissions at the time of sentencing and that your admissions

8  may increase your sentence?

9          THE DEFENDANT:  Yes.

10         THE COURT:  If the sentence is more severe than you

11 expected you will still be bound by your plea.  Even if you do

12 not like the sentence imposed by the Court you will not be able

13 to withdraw your plea.  The time to make that decision is now.

14 Do you understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Parole has been abolished.  If you are

17 sentenced to prison you will not be released on parole.  Do you

18 understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Mr. Luera, you have a right to plead not

21 guilty to any offense charged against you and to persist in that

22 plea.  You would then have a right to trial by jury.  During

23 that trial you would have the right to assistance of counsel for

24 your defense, the right to see and hear all the witnesses and to

25 have your attorney cross-examine them, the right to testify

1  yourself or to decline to testify and remain silent, and the

2  right to have the Court issue subpoenas for any witnesses you

3  wish to call in your defense.

4           At trial you would be presumed to be innocent and the

5  United States would have the burden of proving that you are

6  guilty beyond a reasonable doubt.  Before you can be convicted

7  all 12 jurors must be convinced that the United States has met

8  that burden.

9           If you are found guilty after a trial you would have

10  the right to appeal that conviction to a higher court.  And if

11  you could not afford to pay the cost for an appeal the

12  Government would pay those costs for you.  Do you understand

13  that you have all of these rights?

14           THE DEFENDANT:  Yes, I do.

15           THE COURT:  If you plead guilty, however, and if the

16  Court accepts that plea there will be no trial.  You will be

17  waiving or giving up your right to a trial and all of the other

18  rights I've described.  Do you understand that?

19           THE DEFENDANT:  Yes, I do.

20           THE COURT:  Also, so long as you plead not guilty you

21  have the right to remain silent.  But if you plead guilty you

22  are waiving that right.  I will ask you some questions about

23  what occurred and you must answer those questions truthfully

24  under oath even if your answers establish that you committed a

25  crime.  Do you understand that?

1          THE DEFENDANT:  Understood.

2          THE COURT:  Ms. Sameshima, would you summarize for the

3   Court and the defendant the essential elements which the United

4   States will be required to prove if there were a trial on the

5   charge?

6          MS. SAMESHIMA:  Yes, your Honor.  The Government would

7   have to prove that Mr. Luera agreed with at least one other

8   person to distribute and possess with intent to distribute 500

9   grams or more of a mixture and substance containing detectable

10  amount of methamphetamine; that Mr. Luera was a member of this

11  conspiracy knowing its illegal objects and intending to

12  accomplish at least one illegal object; and, third, the

13  Government would have to prove that the conspiracy involved at

14  least 500 grams or more of a mixture and substance containing a

15  detectable amount of methamphetamine, or that at least 500 grams

16  of pure methamphetamine were attributable to the defendant.

17         THE COURT:  Mr. Oyama, do you disagree in any respect

18  with that summary as to the essential elements?

19         MR. OYAMA:  No.

20         THE COURT:  Mr. Luera, do you understand that if there

21  were a trial on the charge the United States would be required

22  to present evidence sufficient to prove each of these essential

23  elements beyond a reasonable doubt?

24         THE DEFENDANT:  Yes, I do.

25         THE COURT:  You've been charged in Count 1 of the

1    indictment filed on March 17th, 2005, with the violation of

2    Title 21, United States Code, Sections 846, 841(A)(1), and

3    841(B)(1)(a), which charges you with conspiring to distribute

4    and possess with intent to distribute 500 grams or more of

5    methamphetamine, its salts, isomers, and salts of its isomers.

6    Do you understand this charge?

7                THE DEFENDANT:  Yes, I do.

8                THE COURT:  Pursuant to Title 21, United States Code,

9    Section 841(B)(1)(a), this charge carries a mandatory minimum

10   sentence of ten years and a maximum period of imprisonment of

11   life.  Do you understand this?

12               THE DEFENDANT:  Yes, I do.

13               THE COURT:  In order for you to be so punished the

14   Government has the burden of proving to a jury beyond a

15   reasonable doubt that you conspired to -- to distribute and

16   possess with the intent to distribute 500 grams or more of

17   methamphetamine, its salts, isomers, and salts of its isomers.

18   Do you understand this?

19               THE DEFENDANT:  Yes, I do.

20               THE COURT:  Do you waive or give up your right to have

21   a jury determine that you conspired to distribute 500 grams or

22   more of methamphetamine, its salts, isomers, and salts of its

23   isomers?

24               THE DEFENDANT:  I give up my right.

25               THE COURT:  Do you agree that you are knowingly

1    responsible for 500 grams or more of methamphetamine, its salts,

2    isomers, and salts of its isomers as charged in Count 1 of the

3    indictment?

4            THE DEFENDANT:  I'm responsible.

5            THE COURT:  Yes?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Mr. Luera, the plea agreement includes a

8    written summary of facts specifically beginning at page -- at

9    paragraph eight on page four and continuing on to page six.

10   Have you read carefully through that statement of facts?

11           THE DEFENDANT:  Yes, I have.

12           THE COURT:  Are those facts all true in every respect?

13           THE DEFENDANT:  Yes, they are.

14           THE COURT:  Mr. Luera, would you tell me in your own

15   words what you did that constitutes the crime charged against

16   you in this case?

17           THE DEFENDANT:  Well, I guess I conspired to bring the

18   methamphetamine out here.

19           THE COURT:  Well, when you say you guess --

20           THE DEFENDANT:  Well, I conspired to it.  I mean --

21           THE COURT:  You --

22           THE DEFENDANT:  -- someone called me, and they asked

23   me to do something, and foolish of me I listened to them, and I

24   did it.

25           THE COURT:  The indictment alleges in Count 1 that

1  from a time unknown up through and including on or about

2  December 22, 2004, in the District of Hawaii that you and other

3  individuals conspired to distribute and possess with intent to

4  distribute 500 grams or more of a mixture and substance

5  containing the detectable amount of methamphetamine, its salts,

6  isomers, and salts of its isomers.  Is that a true statement?

7           THE DEFENDANT:  Yes, it is.

8           THE COURT:  So, you agreed with other individuals to

9  distribute and possess with intent to distribute 500 grams or

10  more of methamphetamine?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And you knew that the drug that -- that

13  you were intending to distribute was methamphetamine?

14           THE DEFENDANT:  Yes, I did.

15           THE COURT:  Mr. Luera, I'm going to ask Ms. Sameshima

16  to make what's called a proffer which is what the Government

17  would prove if this case were to go to trial.  I'm going to ask

18  her to describe your conduct.  I want you to listen to what she

19  says, because when she's finished I'm going to ask you whether

20  or not you heard what she said, and whether what she said about

21  you and your conduct is true; okay?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Ms. Sameshima, what would be the

24  Government's proffer?

25           MS. SAMESHIMA:  Yes, your Honor.  If this case were to

1    proceed to trial we'd offer the testimony of a number of DEA

2    agents including special agent Pat Pitiano (phonetic) and others

3    as well as Honolulu Police Department officers that in December

4    of 2004 an arrest was made of an individual who they had been

5    investigating for some time and who was involved in multi pound

6    quantities of trafficking of methamphetamine.

7           The individual after his arrest agreed to cooperate

8    and provided information that one of his sources was the

9    defendant Manuel Luera and that over the past six months or even

10   beyond Mr. Luera had in fact distributed multi pound quantities

11   of methamphetamine for this individual who -- who I will call

12   the CD or cooperating defendant.

13          The cooperating defendant indicated that -- well,

14   first of all, the modus operandi for this distribution or this

15   agreement to distribute was that Mr. Luera would contact the

16   source of supply in San Diego for the methamphetamine, the

17   source of supply would then send Federal Express parcels

18   containing methamphetamine to a recipient name and address which

19   the CD would provide to Mr. Luera, who in turn would provide to

20   the source of supply.

21          At some point later once the Federal Express parcels

22   were mailed with the drugs Mr. Luera would text message the

23   number -- the tracking number of the Fed Ex parcel to the CD so

24   that the CD could track the location of the Fed Ex parcel and

25   receive that parcel.

1          After the drugs were received Mr. Luera, who resided

2     on Maui, would then fly to Oahu to meet with the CD and obtain

3     monies in payment for the drugs that had been sent or

4     distributed.  And the CD indicated that this -- this occurred

5     for at least six months to eight months prior to the arrest of

6     the CD.

7          In December -- or on December 17th, 2004, we'd offer

8     testimony from the various agents, the CD, as well as taped

9     recorded conversations between the CD and Mr. Luera in which the

10    CD ordered four pounds of methamphetamine from Mr. Luera, and

11    Mr. Luera contacted his source of supply in San Diego.  Between

12    December 17th and December 20th, Mr. Luera provided the CD with

13    the Federal Express parcel number as per their modus operandi

14    and sometime on December 22nd, I think the Drug Enforcement

15    Officers intercepted a Fed Ex parcel with that tracking number

16    at the Honolulu International Airport.

17         The testimony would be that the Magistrate Judge,

18    Judge Kobayashi, issued a search warrant for that parcel and

19    upon opening the parcel about four pounds of methamphetamine

20    were in fact recovered.  Those drugs were submitted to the DEA

21    Laboratory for analysis.  A forensic chemist has conducted an

22    analysis of those drugs and has determined that those drugs

23    consist of 1,749 grams of demethamphetamine hydrochloride of 99

24    percent purity.  And we'd offer the testimony of that forensic

25    chemist regarding those drugs and -- and his analysis.

1        And the evidence would also be that after that parcel

2  was obtained and searched the CD and Mr. Luera had subsequent

3  recorded calls in which they arranged to meet in Oahu, and Mr.

4  Luera arrived on Oahu from Maui on December 22nd, 2004.  He met

5  with the CD at which time he was arrested.

6        And the evidence would be that after his arrest Mr.

7  Luera waived his Miranda Rights, and he gave a statement in

8  which he basically admitted the elements of -- of the

9  transaction, and he also advised the agents that he had been

10  selling in the last six months between 15 and 20 pounds of

11  methamphetamine to that particular CD.  And that would be some

12  of the evidence that we'd offer at the trial.

13        THE COURT:  Mr. Luera, did you hear what Ms. Sameshima

14  just told me?

15        THE DEFENDANT:  Yes, I did.

16        THE COURT:  Is what she said about you and your

17  conduct true?

18        THE DEFENDANT:  Yes, it is.

19        THE COURT:  Ms. Sameshima, are you satisfied?

20        MS. SAMESHIMA:  Yes, your Honor.

21        THE COURT:  Mr. Luera, if you plead guilty the Court

22  will order that a presentence report be prepared.  The

23  sentencing judge will decide whether or not to accept the plea

24  agreement based in part upon the contents of the presentence

25  report.  If the Court decides to reject the plea agreement you

1  would then have an opportunity to withdraw your guilty plea and

2  change it to not guilty.  Do you understand that?

3                THE DEFENDANT:  Yes, I do.

4                THE COURT:  All right.  Then, Mr. Luera, how do you

5  now plead to the charge in Count 1 of the indictment filed on

6  March 17, 2005, guilty or not guilty?

7                THE DEFENDANT:  Guilty.

8                THE COURT:  Mr. Oyama, are you aware of any reason why

9  the Court should not accept the defendant's guilty plea?

10                MR. OYAMA:  No.

11                THE COURT:  The Court finds that the defendant is

12  fully competent and capable of entering an informed plea, that

13  his plea of guilty is knowing, and voluntary, and supported by

14  an independent basis in fact containing each of the essential

15  elements of the offense.  I am therefore signing the report and

16  recommendation concerning plea of guilty subject to the Court's

17  consideration of the plea agreement.

18                Pursuant to Rule 11(C)(3) of the Federal Rules of

19  Criminal Procedure, I recommend that the defendant be adjudged

20  guilty and have sentence imposed.  Objections to this report and

21  recommendation are waived unless filed and served within ten

22  days.

23                Mr. Luera, I'm ordering our Probation Department to

24  prepare a presentence report in this case.  This is a document

25  about you and your case which will assist the judge in

1    determining your sentence.  The probation officer will interview

2    you.  If you wish your attorney may be present at that

3    interview.

4            You and your attorney will have an opportunity to

5    review the written report and file any objections to its

6    contents.  You and your attorney will also have the opportunity

7    to address the judge at the hearing before the judge imposes

8    sentence.  Date and time.

9            THE CLERK:  Sentencing to Count 1 of the indictment

10   April 17, 2006, 2:15 p.m., Judge Ezra.

11           THE COURT:  The defendant to remain in custody pending

12   sentencing pursuant to the earlier detention order.  Anything

13   further, Ms. Sameshima?

14           MS. SAMESHIMA:  No, nothing further.  Thank you, your

15   Honor.

16           THE COURT:  Mr. Oyama.

17           MR. OYAMA:  Nothing.  Thank you, Judge.

18           THE COURT:  Good luck, Mr. Luera.  We'll be in recess.

19           (At which time the above-entitled proceedings were

20   concluded.)

21

22

23

24

25

1

2

3                          CERTIFICATE

4          I, court approved transcriber, certify that the

5   foregoing is a correct transcript from the official electronic

6   sound recording of the proceedings in the above-entitled matter.

7          Dated this 18th day of May, 2007.

8

9

10

11                          Jessica B. Cahill

12

13

14

15

16

17

18

19

20

21

22

23

24

25