1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF HAWAII

3

4   UNITED STATES OF AMERICA,        ) CRIMINAL NO. 05-00104DAE
                                     )
5                  Plaintiff,        )
                                     )
6        vs.                         )
                                     )
7   MANUEL LUERA,                    )
                                     )
8                  Defendant.        )
                                     )
9   ──────────────────────────────

10              TRANSCRIPT OF PROCEEDINGS

11        The above-entitled matter came on for hearing on

12   Friday, April 28, 2006, at 9:49 a.m., at Honolulu, Hawaii,

13   BEFORE:           THE HONORABLE DAVID ALAN EZRA
                       United States District Judge
14

15   REPORTED BY:      STEPHEN B. PLATT, RMR, CRR
                       Official U.S. District Court Reporter
16

17   APPEARANCES:      BEVERLY WEE SAMESHIMA, ESQ.
                       U.S. Attorney's Office
18                     300 Ala Moana Blvd., Suite 6100
                       Honolulu, Hawaii  96813
19
                                  Attorney for the Government
20
                       MICHAEL J. GREEN, ESQ.
21                     345 Queen Street
                       Floor 2
22                     Honolulu, Hawaii  96813

23                                Attorney for the Defendant

24

25



```
 1    FRIDAY, APRIL 28, 2006                      9:49 A.M.

 2                         -oo0oo-

 3              THE CLERK:  Criminal Number 05-104DAE, United States

 4    of America versus defendant Manuel Luera.

 5              This case is called for sentencing and defendant's

 6    motion to downward departure.

 7              THE COURT:  I believe the defendant's motion for

 8    downward departure was withdrawn?

 9              MR. GREEN:  It has been withdrawn.

10              THE CLERK:  Sorry.

11              MR. GREEN:  That's quite all right.

12              THE COURT:  Okay, would you like to make your

13    appearances.

14              MS. SAMESHIMA:  Yes.  Good morning, your Honor.

15              Beverly Wee Sameshima on behalf of the United

16    States, together with Special Agent Patrick Picciano of the

17    DEA.

18              THE COURT:  All right.

19              MR. GREEN:  Good morning, Your Honor.

20              Michael Green on behalf of Manuel Luera.

21              He is present, and we are prepared to go forward.

22              THE COURT:  All right.

23              Mr. Green, have you and your client had a full

24    opportunity to read, review and discuss the presentence

25    report, and make any objections you wished to make?
```

1          MR. GREEN:  Well, we have reviewed it together

2    recently.

3          And based on my conversations with my client, I had

4    occasion to speak to Probation the other day, and they were

5    kind enough to call me back and -- there is an objection, but

6    in the big picture it doesn't change anything.

7          When you ask me, I'll speak to that issue,

8    Your Honor.

9          THE COURT:  Okay.

10          You can be seated, then, Mr. Green.

11          MR. GREEN:  Thank you.

12          THE COURT:  Thank you.

13          On September the 7th, 2005, the defendant pled

14    guilty to conspiracy to distribute and possess with intent to

15    distribute 500 grams or more of methamphetamine, in violation

16    of 21 U.S.C., Section 846 and 8411(a)1, a Class A felony.

17          There is a plea agreement in this case.  The court

18    has reviewed it.

19          I have also reviewed the presentence investigation

20    and report.

21          And I am prepared to accept the plea agreement,

22    unless there is some objection from counsel.

23          MS. SAMESHIMA:  Not from the government, Your Honor.

24          MR. GREEN:  Not from the defense, Your Honor.

25          THE COURT:  Okay.

4

1          The court hereby accepts the 11(e)(1)(a) plea

2     agreement in this case, finding that it does adequately

3     represent the seriousness of the offense behavior, and does

4     not undermine the statutory purposes of sentencing.

5          There were no objections to the factual statements

6     contained in the presentence report, and the court adopts

7     those as its findings of fact.

8          Prior defense counsel -- or, I don't know.

9          It wasn't yourself, I don't believe?

10          MR. GREEN:  Well, a long time ago, it was.  But most

11     recently, it was Mr. Oyama, Your Honor.

12          THE COURT:  Yeah, you were not there, and then you

13     were there.  And then -- you were there, then you were not

14     there; now you are here.

15          MR. GREEN:  I am here again.

16          THE COURT:  Yeah.

17          I remember we postponed his sentencing once before

18     to give him the opportunity to get advised.

19          So what is this objection that you are making?

20     Because I don't see it here.

21          MR. GREEN:  I will be happy to --

22          Well, you're not going to find it there, Your Honor,

23     or in writing --

24          THE COURT:  Okay.

25          MR. GREEN:  -- because the period of time for those

1    objections had come and gone, and prior counsel did not make

2    those objections.

3            My guess is the government probably doesn't know

4    what I am about to say, but it really doesn't change very much

5    regarding the guideline range that the Probation Officer came

6    up with.

7            In paragraph 37 of the report, there's an adjustment

8    for obstruction of justice which is two points.

9            At the very bottom of Page 9, it says, in this case

10   the defendant admitted that he knew the cooperating

11   defendant -- he's classified as "CD," cooperating defendant --

12   had cooperated with the government, repeatedly --

13   (incomprehensible) -- to flee the state of Hawaii.

14           And that warranted a two-level increase.

15           In fact, after speaking to Mr. Luera, speaking to

16   Probation the other day, what they tell me is, it wasn't that

17   the defendant had admitted to doing these things, but it was

18   simply the cooperating individual who told the government that

19   that's what the defendant did, in conversation.

20           The only reason I raise it is because the government

21   is asking for a substantial period of time in this case, and

22   perhaps you will factor in, in whatever sentence you

23   fashion --

24           I just want to be clear that it wasn't the defendant

25   who admitted to threatening anyone, or encouraging anyone; it

6

1    was simply that the confidential informant said that that's

2    what happened.

3             Maybe it did, maybe it didn't.  I just don't know.

4    But I wanted to be as accurate as I could for the court.

5             It doesn't change the enhancement because there's

6    enough in this case to warrant the two points for obstruction.

7             So I just raise that to be as accurate as I possibly

8    can.

9             THE COURT:  All right.

10            Who was the young woman that was in here just a

11   minute ago?  A lawyer, I believe.  Did she have some

12   connection with this?

13            MR. GREEN:  I'm sorry?

14            THE COURT:  She is a lawyer.  She was sitting in the

15   back.

16            MR. GREEN:  She had a connection with your last

17   case.  I think one of her associates had an interest in your

18   ruling in the last case.

19            THE COURT:  Okay.

20            So she didn't have a connection --

21            MR. GREEN:  No.

22            THE COURT:  Huh?

23            MR. GREEN:  There were two women in here that had an

24   interest in your last case; both lawyers.

25            THE COURT:  Yeah, they were both lawyers, and she

1  kind of got up and left, and I thought she was connected with

2  this.

3              MR. GREEN:  No.

4              THE COURT:  Okay.

5              All right, well, the total offense level is 37.  The

6  criminal history category is two.  The imprisonment range is

7  235 to 293 months.  Five years of supervised release.  A fine

8  of $20,000 to $4 million.  And there is no restitution

9  applicable here.

10             The motion for downward departure was pre-Booker

11  type motion, and it's been withdrawn.

12             Okay, so I guess, first, I would hear from the

13  government, since we have no motions -- other motions.

14             MS. SAMESHIMA:  Your Honor, we did file a fairly

15  lengthy sentencing statement --

16             THE COURT:  I saw that.

17             MS. SAMESHIMA:  -- where we wanted to give the court

18  a little bit more background about this particular defendant's

19  conduct.

20             We also filed an opposition to their most recently

21  filed sentencing memorandum.

22             I just want to highlight a number of things:

23             As this court knows, Mr. Green and I have had a long

24  history in this case.  Mr. Green appeared for Mr. Luera when

25  he was first arrested.

8

1          THE COURT:  Right.

2          MS. SAMESHIMA:  And as the court can see, Mr. Luera

3  was given a lot of breaks by the government.

4          He did agree to cooperate when he was first

5  arrested.  And based upon his cooperation, Agent Picciano

6  convinced our office to allow them to take Mr. Luera up to

7  San Diego in order to meet with the source.

8          That was done.

9          That source was arrested.  I charged the source

10  here, but it was subsequently transferred to San Diego, where

11  he -- the source ended up resolving his case there.

12          Now, when he came back, Mr. Luera finished that

13  cooperation.  Against my better judgment, Mr. Green and

14  Agent Picciano convinced me to allow Mr. Luera to be released

15  on $100,000 bond, secured by $25,000 cash.

16          You look at his criminal history, his two prior

17  convictions, he was revoked -- like, four or five times on

18  each.

19          And as the court knows, I'm not real open to release

20  when there's any kind of problem.

21          But in this case, because of the proffer that he was

22  a big player on the local scene, he could do a lot of very

23  valuable targets, and because he had cooperated initially,

24  against my better judgment I --

25          THE COURT:  Pretty successfully, actually,

1    initially.

2              MS. SAMESHIMA:  Well, initially, yeah.  So I agreed.

3              And very soon after that occurred, it was clear he

4    wasn't going to cooperate.

5              According to Agent Picciano, he asked Mr. Luera to

6    do certain things.  There was always an excuse, Oh, I cannot

7    do this, I cannot do that.  But he had already been released.

8    And barely two months after he was released, he absconded.

9              Now, the adjustment, point two -- plus two for

10   obstruction is really, I think, understated.  It's like a gun

11   case, Your Honor, where a defendant may have, like, 50 guns or

12   more, but he just gets a point two enhancement.  This is the

13   same thing.

14             This man has obstructed justice in four separate

15   cases.

16             By fleeing the jurisdiction, he jeopardized his own

17   case.  By encouraging his brother, who was charged in a

18   separate case, to flee with him, he jeopardized that case.

19             By trying to call the cooperating defendant, who was

20   on release and cooperating with Agent Picciano and would call

21   Agent Picciano every time he got a call from Mr. Luera, he

22   jeopardized that case.  And he jeopardized the source's case

23   in San Diego.

24             I think he should have gotten an eight-level

25   increase.  So I think the court needs to factor that in, and I

1  think that plus two obstruction is very well taken.  I haven't

2  seen a clearer case than that here.

3          Now, the other concerns the government has, of

4  course, is -- and that was the reason I appended the reports

5  to my most recent opposition -- is that this defendant seems

6  to go out of his way to harass and to threaten people.

7          I think it was enough of a concern to the deputy

8  marshals, that they wrote a report about it.

9          And that's how we found out he fled, is when Deputy

10 Marshal Tanya Muna contacted pretrial after that incident

11 regarding the van.  Pretrial tried to get ahold of Mr. Luera,

12 and they could not get ahold of him.

13         And very soon after, we got the call from Mahoney

14 Hale with respect to the brother, who had never returned that

15 evening from a work release.  So we knew almost immediately.

16         And then a week later, he calls the CD -- he

17 threatened the CD, tells the CD he's fled, and encourages the

18 CD, not once, not twice, there are about eight calls that he

19 makes to the CD, encouraging him to flee.

20         Now, I don't think the court can show leniency in

21 this case.  This guy has not learned.  Any cooperation he gave

22 is totally nullified, Your Honor.  That case against the

23 source was jeopardized.  Those other three cases were

24 jeopardized.

25         And I think a very high sentence is appropriate in

1    this case, to send the message --

2            I don't know if this defendant can be rehabilitated,

3    but I don't think it's appropriate for him to be out in any

4    short length of time.

5            If the court has anything the court would like me to

6    focus on?

7            THE COURT:  No.

8            MS. SAMESHIMA:  Okay, thank you.

9            THE COURT:  I will give you a chance for rebuttal

10   after Mr. Green.

11           MR. GREEN:  Thank you, Your Honor.

12           Well, it's obvious that she doesn't like my client.

13   And with good reason, with good reason.

14           THE COURT:  Well, I think the last statement is

15   true.  Yes, she has very good reason.

16           MR. GREEN:  Yes.

17           Let me try and put as much of this as I can in

18   perspective, from what I know from a long time ago with this

19   young man.

20           First of all, this agent went out of his way.  I

21   have known him for a long time, and I will say to you, not to

22   be condescending to this agent, but in our business, you know

23   very well, Your Honor, that probably 95 percent of drug cases

24   in this jurisdiction are pled out.  And it's critical for us

25   to have agents that we never have to worry about their word.

1    If we sit down and we try to work out something, they are

2    there.  He's been there the whole time.

3              Ms. Sameshima, everything she said to you was

4    accurate regarding the beginning of this case.

5              I fought hard to get Manny out.

6              The cooperation he provided initially -- I was doing

7    a case in San Diego and it happened to be that he was down

8    there with the agents, completing the cooperation on that

9    target, who was arrested and ultimately pled guilty.

10             I would see Manny when he was out on bail a lot.  He

11   was at the University of Hawaii, taking several courses.  He

12   was working at Home Depot.  So he was in college and he was

13   working while he was out on bail.

14             Invariably, as most clients will do with their

15   lawyers in these cases -- and this is kind of ironic -- they

16   have the right to kind of have the idea if you hire a lawyer

17   that you think is competent, how much time am I looking at?

18             And frankly speaking, there is not a lawyer around

19   that's in this business that can answer this question, because

20   we never really know.

21             I mean, we don't know until we have Probation

22   Officers, and we have judges like yourself, Your Honor, that

23   basically one day pronounce the sentence.

24             It's even hard to guess.  Because, first of all, you

25   don't want to guess.  And then, until the points are added and

1    subtracted, and things like that, and motions are filed by the

2    government, if they do, for departure, there's no sense in

3    making someone feel like it's not going to be forever, or it's

4    going to be less than that, and then something changes.

5            So Manny and I would invariably get into this

6    colloquy about, you know, my mom has come up from the

7    mainland, she's elderly, I need to tell her something.

8            I said, Manny, I can't tell you.  There's mandatory

9    minimums, but you've done a lot, and I really believe that the

10    government will file a motion for substantial downward

11    departure, but I just don't know.

12            What I think really happened was that it finally got

13    to him.  I think he just basically snapped.  I think the

14    pressure of seeing his mother up here, his brother's at a

15    halfway house --

16            And this is not -- it's not excusable, but it's just

17    human.  But he just snapped.  And he went back to the San

18    Diego area.

19            One of the other things that I -- I really wanted to

20    mention to you, and of course I will, is that I read the

21    marshal's report regarding the fact that Manny is waving --

22    rolling down the window.  And it's really bizarre.

23            And I said to Manny, what is this?  He said, I was

24    on my way to Home Depot, I was working there, and I saw them.

25    And, in his mind, he thinks they are, like, friends.  These

1    are the guys that, when he was in custody, would bring him up

2    and down, and transport him.

3           It's like, he thinks they are friends.  And he's

4    joking with these guys.  He's -- yeah.  They are driving and

5    he is driving, and he is waving to them, and he is on his way

6    to work.

7           That's not a joke.  These guys are doing their job,

8    and they got Mr. Luera.  It's not like they didn't roll down

9    the window.  He rolls down the window and he is waving.  I

10   mean, it's really inappropriate.

11          And this is not a defense.  But when I read the

12   report, and I see that there were some issues when he was 13,

13   where he was seeing some psychiatrist for what appeared to be

14   inappropriate behavior, I think he's probably very, very young

15   for his years.

16          And then we get to the government's position

17   regarding sentencing.

18          Wow, you know, permit me to just go back a bit in

19   the years.

20          As I was coming up, a lot of my colleagues were

21   blessed enough to go to the State bench.  Judge Aspen, who I

22   know is a colleague of yours, I appeared in front of him 30

23   years ago when he was a State judge.

24          And what I noticed over the years, with my friends

25   that were my age that became judges, is that, after a period

1    of time --

2            In Chicago, everything was a split sentence, four

3    and a day, four to 12, 50 to 150.  I had a client get a

4    thousand to 3,000 once; killed a policeman.

5            It seems that, as years go by, when we talk about

6    numbers of sentences, years of confinement, I'm 63 years old.

7    I don't remember often arguing for ten years.

8            My daughter, God bless her, will be 34.  She will

9    probably -- if she wants to, will have a family in ten years.

10           Manny is 29 years old.  By the mortality tables, at

11   the age of 30, if we put another ten -- if we get what they

12   want, that they are asking, basically, he will die in prison,

13   most likely.  Or he will be very, very old, in the sense -- I

14   mean, he might be my age.  I don't like to think of myself as

15   "very, very old."  But ten years is an enormity.

16           And, frankly, when I look at what he has done to

17   deserve the ten years, when I look at what the agents have

18   done, and the government has done to try to get drugs off the

19   street, and to work with us in this case, I -- I told Manny,

20   if he wants me back in this case, I'm not arguing a motion for

21   downward departure in this case.  I mean, I'm not throwing

22   gasoline on this case and lighting the match.  Because it just

23   isn't warranted.

24           And I hope that Manny at least appreciates the sense

25   of trusting in my judgment.

1            But ten years is a lot of time.  And, well, I say

2    that, it's more than a lot of time.

3            I think he still is capable of having some

4    redemption.  I think he is capable of being rehabilitated.  I

5    think his childishness and his acting out, which is seen, as I

6    said, with this waving to his marshals -- he's going to be 40

7    years old.  A substantial portion of his life will be taken

8    away.

9            I don't know if he qualifies for a drug program.  I

10   mean, he's been using cocaine and alcohol since he was very,

11   very young.

12           I think there is redeeming value for him,

13   Your Honor.

14           And, as I said, I don't blame the government for

15   wanting every drop in this case.  But when they say

16   substantial time, I mean, if we are all healthy and well,

17   where are we going to be in ten years?  I know he's not going

18   to -- he's going to miss his thirties.

19           So, as I said, I've known this court long enough to

20   know that you temper justice with mercy, and there has to be

21   obvious punishment.

22           And the government, the case that he made was

23   prosecuted successfully.  My guess is that Mr. -- (inaudible)

24   -- probably gave additional information to the agents that

25   resulted in getting drugs and people off the street.

1            The fact that Ms. Sameshima is right when she says

2     cases were jeopardized -- they were, but to no harm to the

3     government.

4            The harm was Manny going back to being in the area

5     where his mother was after she came here, went back to San

6     Diego, being with his brother -- just stupid.

7            But, I have always believed until I walk in someone

8     else's shoes, I can't imagine what he is thinking as days go

9     by and he is wondering how much of his life he is going to

10    spend in federal prison, and he takes off.

11           I have told him and I think he does realize that you

12    can't do this and then expect for the government to ask that

13    you get the benefit of any bargain.

14           And I'm not asking that.  But there is value in this

15    young man.  It's just that, as I said, ten years is a

16    tremendous amount of time, Your Honor.  But that's obviously

17    what I'm asking the court to consider.

18           As you know, I never make recommendations to this

19    court, but --

20           THE COURT:  Does your client wish to address the

21    court?

22           MR. GREEN:  I think he does.

23           THE COURT:  All right.

24           He can do it from there.

25           THE DEFENDANT:  How you doing?

1          Well, I would like to tell Pat and Ms. Sameshima

2     that I really appreciate everything they have done for me in

3     the whole time.

4          I made a huge mistake in leaving when you guys

5     trusted me.  I know you expected me to do a lot of things.

6     And I wanted to do them, but I was going to school, and I

7     thought I was still young and I couldn't picture myself really

8     living in prison, so... I just went back home and thought I

9     was safe.  I made a mistake.  I am really sorry.

10          That's all I can say, Judge.

11          THE COURT:  All right, you can be seated.

12          Anything else, Ms. Sameshima?

13          MS. SAMESHIMA:  Just a few things, Your Honor.

14          It's not just -- I kind of focus on the

15     obstructionist conduct.

16          But, again, this man admitted to being responsible

17     for 20 pounds of methamphetamine.  We seized 1.7 kilograms.

18          And I think what I am hearing, and in the papers and

19     the arguments -- although Mr. Luera is apologizing to us

20     now -- is that he really hasn't shown remorse.  He has excuses

21     for what he did.

22          Waving at the marshals?  No, I don't think so.

23          Claiming that he was giving information to the FBI?

24     No, I don't think so.

25          He tried to run when the marshals finally, after

19

1    efforts and expense in tracking him down, he and his brother

2    tried to flee when they spotted them.

3              So I don't see that issue, or that hope of

4    rehabilitation.  I haven't seen any real remorse, and that's

5    another concern to the government.

6              THE COURT:  All right.

7              Well, in this case we have a whole range of issues

8    and problems that intersect.

9              Obviously, when he was first arrested, he had an

10   opportunity, to a large degree, to help himself.  And,

11   initially, he did.  He did provide assistance.

12             Obviously, the assistance was worthwhile.  There was

13   a case made in San Diego, and the court would have looked

14   very, very favorably on that.

15             Then, unfortunately, he decided he didn't like

16   Mr. Green anymore, for whatever reason.  Big, big mistake.

17   That was mistake number one.

18             And then he decided he was going to abscond.  Which

19   was mistake number two.

20             Then he decided he was going to try to assist others

21   to abscond, and to encourage them to violate the trust of the

22   government.  And that was mistake number three.

23             And then, instead of turning himself in and facing

24   up to his problems, he tried to flee again when the marshals

25   finally went after him.  And that was mistake number four.

1          Now, the court's responsibility in these kinds of

2     cases --

3          Actually, the only thing he did smart was rehire

4     Mr. Green.  But, unfortunately, the problem here is that

5     Mr. Green, as good a lawyer as he is, simply can't change the

6     facts.

7          It's like bringing the world's best surgeon in to

8     remove a nonoperable brain tumor.  I mean, it doesn't matter

9     how good the surgeon is.  If it can't be removed, it can't be

10    removed, that's all there is to it.

11         And Mr. Green can't go back and undo all of the

12    things that the defendant has done here.

13         And his attitude throughout the latter part of this

14    case has been rather malignant, to say the least.  He just

15    simply has gone off the reservation, way off the reservation.

16         Now, my job is to look at the entire case, to look

17    at all of the factors, look at him individually, and to

18    consider carefully each of the components of 3553, which I

19    have done, in sentencing him.

20         Now, understandably, the government is very upset,

21    and feels personally betrayed.  I can't get off the bench, and

22    I won't get off the bench and join the government counsel in

23    their righteous indignation of the defendant.

24         My job is to be objective.  And while I think

25    Ms. Sameshima's -- and I'm sure the agent's -- anger at him is

1    justified, I can't sentence him, and I won't sentence him,

2    based upon the government's feeling of betrayal; that's not an

3    appropriate basis, and it's certainly not a factor listed in

4    3553.

5            On the other hand, I do and will take into careful

6    consideration the factors that are appropriate, such as his

7    potential for rehabilitation; what he's done since; how he's

8    acted; the nature and seriousness of the offense; his prior

9    criminal history.  All of these things have been taken into

10   account, and have to be taken into account in imposing

11   sentence.

12           The guidelines here are advisory.  The court doesn't

13   give them any greater weight than I would any other factor

14   under 3553, pursuant to U.S. versus Avalla.

15           But in this case, I think, unfortunately for the

16   defendant, he has essentially eclipsed the majority of his

17   early cooperation by his subsequent misconduct.  Not entirely.

18           I would have, given the large quantity of drugs

19   involved here, and given what he did, had he not cooperated, I

20   would have clearly imposed a sentence that would have been at

21   the very high end of the guidelines.

22           But I am going to give him some credit for what he

23   did, because it was useful to the government.

24           And I think that, in the government's own mind, his

25   misconduct subsequent to that should erase that.  I don't

1    agree with the government in that regard.  And I think that

2    that's an understandable human trait.

3              I think if I was Ms. Sameshima down there and I had

4    been kind of twisted about and had my good faith essentially

5    slapped in the face, I would be just as upset as she is.  But

6    I can't join in that, and I won't.

7              On the other hand, the sentence that is requested by

8    Mr. Green would have been a sentence that would have been

9    appropriate, maybe even a lower sentence, had he done what

10   Mr. Green had advised him to do.

11             Had he not run away.  Had he continued to cooperate.

12   Had he behaved as if he was rehabilitatable.  Had he conducted

13   himself in an appropriate fashion.

14             It would have been the kind of sentence that I would

15   have thought very carefully about.

16             But, unfortunately, he negated that possibility.

17             So, pursuant to the Sentencing Reform Act of 1984,

18   it is the judgment of the court that the defendant is hereby

19   committed to the custody of the Attorney General of the United

20   States, or his authorized representative, to be imprisoned for

21   a term of 240 months.

22             After he has completed the term of imprisonment, he

23   must serve a five-year term of supervised release.

24             During the term of supervised release, he is to

25   abide by the following conditions:

1          He shall abide by the standard conditions of

2     supervision.  He shall not commit any federal, state or local

3     crimes.  He must not possess any illegal controlled

4     substances.  He shall cooperate in the collection of DNA as

5     directed by the Probation Officer.

6          He shall refrain from any unlawful use of a

7     controlled substance.  Must submit to one drug test within

8     15 days of commencement of supervision, at least two drug

9     tests thereafter, but no more than eight valid drug tests per

10    month during the term of supervised release, as directed by

11    the Probation Office.

12         He shall not possess a firearm, ammunition,

13    destructive device or other dangerous weapon.

14         He shall submit and participate in a substance abuse

15    program, which must include drug and alcohol testing.  He

16    shall refrain from the possession and/or use of alcohol while

17    participating in the substance abuse program.

18         He shall submit his person, residence, place of

19    employment or vehicle to a search conducted by the U.S.

20    Probation Office, at a reasonable time and in a reasonable

21    manner, based upon reasonable suspicion of contraband or

22    evidence of a violation of a condition of supervision.

23    Failure to submit to such a search may be grounds for

24    revocation of supervised release.

25         The defendant does not have the assets to pay a

24

1    fine, so I will not impose one.  But he must pay the United

2    States a special assessment of $100.

3            Now, you have waived your right to appeal your

4    sentence in your plea agreement.  So no appeal is available.

5            However, you do have the right to challenge, in a

6    collateral way, your sentence in this case by claiming

7    ineffective assistance of counsel.

8            Now, I mention that only because it is my

9    responsibility to do so, and not because I believe in any way

10   that Mr. Green, or, for that matter, even Mr. Oyama, were

11   ineffective in this case.  Quite to the contrary.  But it is

12   my obligation to advise you of your rights.

13           I must also make a recommendation --

14           I believe I believe I have imposed the $100, have I

15   not?

16           MS. SAMESHIMA:  Yes, Your Honor.

17           THE COURT:  Okay.

18           I must also make a recommendation as to the place of

19   incarceration.

20           Where would you like to serve your sentence?

21           MR. GREEN:  Some place in California, Your Honor.

22           THE COURT:  All right.

23           MR. GREEN:  Lompoc?  You know what?  Maybe Terminal

24   Island.

25           THE COURT:  I don't think there is a federal

1    facility in San Diego, so --

2                    MR. GREEN:  No.  He says Lompoc, Your Honor.

3                    THE COURT:  Lompoc?  All right.  I will recommend

4    Lompoc.

5                    MR. GREEN:  Are you recommending the drug program,

6    as well, Your Honor?

7                    THE COURT:  Yes.  But he won't be eligible for

8    several years.

9                    MR. GREEN:  I understand.  But at least it's 14

10   months less.

11                   THE COURT:  Right.

12                   (Discussion off the record between

13                    Mr. Green and the defendant.)

14                   (Defendant talking to unidentified

15                    person in the gallery.)

16                   THE COURT:  Mr. Luera, I am sorry.  You did it to

17   yourself.  If you had just simply done what you were supposed

18   to do, if you had listened to Mr. Green, if you had not run

19   back to California, you wouldn't be in this position.  You put

20   yourself where you are, unfortunately.

21                   The only thing I can suggest to you is that you

22   behave in jail so that you get good time, and then, under

23   those circumstances, maybe you can help yourself.  But you

24   have nobody to blame but yourself.

25                   MS. SAMESHIMA:  Your Honor, I move to dismiss

26

```
 1   Count Two.

 2            THE COURT:  Motion is granted.

 3            Anything else?

 4            MR. GREEN:  Thank you.

 5            No, Judge.

 6            THE COURT:  Okay.

 7            MS. SAMESHIMA:  Thank you.

 8            THE COURT:  Court is in recess.

 9            THE CLERK:  All rise.

10            The court now stands in recess.

11            (The hearing in the above-entitled

12            cause was concluded at 10:22 a.m.)

13                     - - -

14

15

16

17

18

19

20

21

22

23

24

25
```

27

```
1
2
3
4
5
6
7                              -ooOoo-
8          I, Stephen B. Platt, Official Court Reporter,
9   United States District Court, District of Hawaii, do hereby
10  certify that the foregoing is a true and correct transcript of
11  proceedings before the Honorable David Alan Ezra, United
12  States District Judge.
13
14
15
16
17
18
19                              /s/ Stephen B. Platt
20                         -------------------------------
21  MONDAY, JUNE 4, 2007        STEPHEN B. PLATT, CSR NO. 248
22
23
24
25
```