ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 12 2007

at \_\_\_ o'clock and \_\_\_ min. \_\_\_ M
SUE BEITIA, CLERK

RANDY OYAMA, #5767
Attorney at Law
888 Mililani Street, PH2
Honolulu, Hawaii 96813
Telephone: 521-9840

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CV. NO. 07-00234 DAE-KSC |
| | ) | CR. NO. 05-00104DAE |
| Plaintiff, | ) | |
| | ) | DECLARATION OF RANDALL OYAMA |
| vs. | ) | |
| | ) | |
| MANUEL OMAR LUERA, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF RANDALL OYAMA

I, RANDALL OYAMA, upon penalty of perjury, declares and states as follows:

1. I am an attorney licensed to practice law before the United States District Court in the District of Hawaii. I was retained as counsel for Manuel Omar Luera ("Luera") in connection with his criminal case on or about July 22, 2005.

2. Luera was indicted on two counts of conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine and knowing and intentional attempt to distribute 500 grams or more of methamphetamine. In June, 2005, Luera was apprehended in San Diego and he was returned to Hawaii in the U.S. Marshals custody. Luera violated his pretrial release

conditions by leaving Hawaii without permission or notification to Pretrial Services.

3. Luera and I met on more than six occasions to discuss the case. We went over the charges and evidence against him, possible defenses and the best course of action to take. We also discussed the sentencing guidelines and the potential sentence he was facing if convicted. We reviewed the discovery which the government had provided to us together, including the agent reports. We discussed how a trial of the case would proceed, what witnesses the prosecution could call and what defenses might be available. Based upon the evidence, it appeared to us that the government's case was solid. Luera and I also discussed the effect his violation of pretrial release conditions had on his initial cooperation. After weighing all these factors, Luera decided to enter a guilty plea.

4. I contacted government counsel to request a draft plea agreement and after receiving it, discussed it with Luera. We went over all of the provisions of the agreement, including the appellate waiver. We discussed the fact that Luera could not appeal his sentence except if the court imposed a sentence higher than the advisory guidelines or if he had a claim of ineffective assistance of counsel. Luera understood that he was giving up his right to an appeal except under these two limited circumstances and that he was giving up his right to a jury trial and the other rights set forth in the agreement.

5. On September 7, 2005, Luera entered his guilty plea before Magistrate Judge Kevin S.C. Chang. Based upon our discussions, I

believe that Luera was well aware of the rights he was giving up when he entered his plea. I have no doubt that his plea was voluntary and that it was his decision. I never told Luera to tell the Judge that he understood what he was doing. Luera understood his rights and the consequences of his plea.

6. After receiving a copy of Luera's Draft Presentence Report ("PSI"), I discussed it with him. Luera was concerned about the obstruction of justice enhancement and wanted me to fight it. Luera told me that when he had left Hawaii and was in San Diego, he contacted the DEA case agent, Pat Picciano who told him that it was okay for him to leave Hawaii and that he did not need to self-surrender or turn himself in. Luera told me to contact Picciano who would confirm that this was what happened. I called Agent Picciano and related what Luera claimed. Agent Picciano denied the statements claimed by Luera. After speaking with Agent Picciano, I told Luera that it was not in his best interest to object or contest the obstruction of justice enhancement. First, the court would have to make a credibility determination to resolve the factual dispute. Luera's claims did not seem credible. Second, Agent Picciano denied the claims and his testimony would contradict Luera's statements. Third, it did not make sense for an agent to tell a fugitive defendant to disregard a court order. I believed that if the court found Luera was lying about his conversations with Picciano, he may incur additional liability for obstruction. Luera and I agreed that the better tactic was to file a motion for downward departure based upon his initial cooperation

but not to contest the obstruction of justice enhancement. Although there was no legal basis for a defendant to compel a 5K motion based upon substantial cooperation, under <u>Booker</u>, the court could depart below the advisory guidelines based upon other factors, including cooperation. Luera ultimately agreed with this strategy. As a result, I filed a Sentencing Statement without objections and I filed a motion for downward departure.

    7. On April 24, 2006, I withdrew as counsel and Michael Green substituted in as Luera's counsel. I did not represent Luera at his sentencing.

    I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

    DATED: Honolulu, Hawaii, June 8, 2007.

                                              RANDALL OYAMA